Moss, Judge,
delivered the opinion of the court:
Plaintiff, National Candy Company, was organized in 1902 and was engaged in the manufacture and sale of candy. In 1906 plaintiff organized the Clinton Sugar Refining Company (now called the Clinton Corn Syrup Refining Company) and acquired $566,000 of the $600,000 in par value of the common stock of same. Plaintiff and the Clinton Sugar Refining Company filed separate tax returns for the calendar year 1917. The Commissioner of Internal Revenue determined that during that year the two companies were affiliated within the meaning of the war revenue act of 1917 and the regulations promulgated thereunder, and computed and assessed the excess-profits tax for 1917 against the two corporations on a consolidated basis, which resulted in the payment by plaintiff of an additional tax. Claim for refund was duly filed and was rejected. This action is for the recovery of the additional tax.
Section 201, Title II, of the revenue act of 1917, 40 Stat. 303, which is the act creating the excess-profits tax, contains the following provision:
“For the purpose of this title every corporation or partnership not exempt under the provisions of this section shall be determined to be engaged in business, and all the trades and businesses in which it is engaged shall be treated as a single trade or business, and all its income from whatever source derived shall be determined to be received from such trade or business.” (Our italics.)
Under authority expressly provided in this act the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, promulgated certain regulations for the administration of the act. Article 77 of said regulations provides that every corporation shall describe in its returns all its intercorporate relationships with other corporations, and will furnish such information in relation thereto as will enable the Commissioner of Internal Revenue to properly compute the tax on the basis of an equitable accounting. It also provides that, “ For the purpose of this regulation two or more corporations will be deemed to be affiliated (1) when one such corporation owns, directs, or *84 affiliated interests, or by a nominee or nominees, all, or substantially all of the stock of the other, or others, or when substantially all of the stock of two or more corporations is owned by the same individual or partnership, and both or all of such corporations are engaged in the same or a closely related business; * * *." (Our italics.) Article 78 authorizes the commissioner to require the filing of consolidated returns of net income and invested capital whenever necessary to more equitably determine the invested capital or taxable income, and it further provided that if such corporations, when requested to file such consolidated returns, shall neglect or refuse to do so, the commissioner may cause an examination of the books of such corporations to be made and a consolidated statement to be made therefrom. In cases where the consolidated returns are accepted, the total tax will be computed as a unit upon, the basis of the consolidated return, and will be allocated to the respective affiliated companies in such portions as may be agreed among them. But if no such agreement is made, the tax will be assessed by the commissioner upon each such corporation in accordance with the net income and invested capital properly assignable to it.
It was under the authority of these regulations that the commissioner determined that the two companies involved herein were affiliated. We are unable to agree with plaintiff’s contention that articles 77 and 78 were unauthorized, because contrary to the provisions of the statute. It is a well-established rule that a departmental regulation will be upheld unless, in the judgment of the court, it is “ plainly and palpably inconsistent with law.” Boske v. Comingore, 177 U. S. 459. It can not reasonably be contended that the regulations in question requiring consolidated returns by affiliated corporations were inconsistent with the provisions of the act of 1917. On the contrary, such regulations appear to be entirely appropriate for the ends and purposes of said act. Furthermore, it should be noted that the interpretation of the act by the Commissioner of Internal Revenue, as expressed in the foregoing regulations, was approved by Congress in the subsequent enactment of the revenue act of 1918, which embodied in its terms the essential requirements and *85 provisions of said regulations. 40 Stat. 1081, 1082. It will further be observed that by the revenue act of 1921, section 1331 (c), 42 Stat. 319, Congress again incorporated the requirements and provisions of said regulations, and provided that “ The provisions of this section are declaratory of the provisions of Title II of the revenue act of 1911.” The theory of consolidated returns by affiliated corporations is now a well-established principle of our taxing system. It is not an attempt, as plaintiff urges, to assess a tax against one taxpayer measured by the income of another taxpayer. The principle upon which it is based is succinctly stated in article 631 of Treasury Regulation 69, as follows:
“Consolidated returns are based upon the principle of levying the tax according to the true net income of a single •enterprise, even though the business is operated through more than one corporation. Where one corporation owns the capital stock of another corporation or other corporations, or where the stock of two or more corporations is owned by the same interests, a situation results which is •closely analogous to that of a business maintaining one or more branch establishments. In the latter case, because of the direct ownership of the property, the net income of the branch forms a part of the net income of the entire organisation.”
The constitutionality of the requirement for consolidated returns by affiliated corporations, as provided by the revenue act of 1918, was upheld in the case of United States v. Whyel, 19 Fed. (2d) 260, wherein the court said: “There is no question as to the right of two or more corporations to become affiliated, and, where such relationships are voluntarily assumed by the companies, there would appear no valid objection to the application of the statute, as the total tax is computed as a unit. The authority to distribute the tax equitably is vested in the corporations themselves, and it is by no means apparent that any hardship or injustice can result from such an arrangement.”
We conclude, therefore, that the act of 1917, as interpreted by the commissioner and as construed by section 1331 of the act of 1921, is not in violation of the Constitution of the United States in any respect.
*86 Plaintiff owned 94.33 per cent of the stock of the Clinton Sugar Refining Company. That this percentage brings the case within the meaning of the term “substantially all,” in the light of the authorities, scarcely needs argument. In Mahoning Coal Railroad Company, 4 B. T. A. 923, a holding of 81 per cent of stock was held sufficient, and in Watsontown Brick Company, 3 B. T. A. 85, a holding of 93.6 per cent was determined to be sufficient. There are numerous other decisions to the same effect.
With regard to the question as to whether or not plaintiff and the Clinton Sugar Refining Company were, in 1917, engaged in the same or a “ closely related business,” it must be remembered, in the first place, that plaintiff itself organized the Clinton Sugar Refining Company in 1906 to meet a situation which at that time was threatening serious embarrassment to plaintiff in the matter of supply of corn syrup. The “ Corn Products Refining Company ” at that time had a monopoly on the production of corn syrup, which is one of the principal ingredients in the manufacture of candy, constituting 16 per cent in value of the total of raw materials used in such manufacture. There were also rumors that said Corn Products Refining Company was endeavoring to secure control of the important users of corn syrup. In these circumstances' plaintiff was unable to obtain prompt and satisfactory supplies of corn.syrup, and determined upon the policy of manufacturing its own supply of that material; and it was to effectuate that purpose that plaintiff organized the Clinton Sugar Refining Company. It will also be noted that the officers and directors of the two companies were the same, and they held the same relative positions in each company, except that the Clinton Sugar Refining Company had'’two vice presidents, only one of whom was vice president in plaintiff’s company, and plaintiff had four directors, only three of whom were directors in the Clinton Sugar Refining Company. Plaintiff company, as stated above, owned 94.33 per cent of the stock. It is impossible to conceive of a more striking example of a “ closely related business ” than that which is afforded by the facts in the instant case. And the fact that the Clinton Sugar *87 Refining Company, organized by plaintiff for the purpose of supplying an essential ingredient for the production of candy, and managed and controlled by the same officers, developed a capacity for the production of a much larger supply of the raw material than was needed by plaintiff, and was able to engage in a profitable business with the outside trade, does not affect the principle. In legal effect, the relationship between the corporations remains precisely the same as if the original purpose of supplying plaintiff’s own needs for corn syrup had been adhered to. Inasmuch as the purpose of the organization and operation of the Clinton Sugar Refining Company was, in a large part, to produce and supply an essential portion of plaintiff’s raw material, it is not merely a “ closely related business,” but might logically be construed as a part of the swine business.
Plaintiff makes the further contention that there should have been added to its invested capital, as an alleged organization expense, the sum of $358,000. This contention is not supported by the record. The entire common stock of plaintiff company was carried on the books of the company as good will. Two of the items contained in the good will account were as follows:

The first item of $324,500 represents a block of common stock, of the actual value of $64,900, which was issued to one Edwin Carbin for services in promoting the organization of the National Candy Company. The second item of $1,465,500 represents a block of the common stock of the actual value of $293,100, which was issued to the Mississippi Valley Trust Company as a bonus. This company paid to plaintiff the sum of $1,000,000 in cash, and received therefor all of the first preferred stock issued by plaintiff company, together with the block of common stock mentioned above. These two issues of common stock were of the value of $20 a share, or a total of $358,000. Plaintiff contends that these two items represent organization expenses and should be added to invested capital. It will first be noted that the items are different in character. The stock issued to Edwin *88 Carbin was for services in the promotion and organization of plaintiff company, while as to the other item, the Mississippi Valley Trust Company, which had underwritten the first preferred stock of plaintiff company, amounting to $1,000,000, paid that amount in cash for all of said preferred stock, which was issued and delivered to said company, together with a bonus of the common stock of the actual value of $293,100. It is not made to appear that any part of said stock was issued in consideration of promotion services. Assuming, however, that both items represent a total organization expense of $358,000 as contended, the elimination of that sum from the good will account, and the addition of same to organization expense, would not affect the amount of invested capital. However, plaintiff can not recover on this item for the reason that same constituted no part of the claims for refund presented by plaintiff. In the case of Tucker v. Alexander, 15 Fed. (2d) 356; 275 U. S. 228, the Circuit Court said:
“ The evident purposes and objects of this condition (filing of claim) are to afford the commissioner an opportunity to correct errors made by his office and to spare the parties and the courts the burden of litigation in respect thereto. Unless the claimant were required to present to the commissioner all of the grounds upon which he relies for refund, the above purposes and objects would-be partially or entirely defeated.” (Our italics.)
While this case was reversed by the Supreme Court on the ground that the failure to state the ground in the claim for refund had been waived, the principle announced by the Circuit Court, as above quoted, remains unaffected. In the case of Red Wing Malting Company v. Willcuts, 15 Fed. (2d) 626, in which certiorari was denied, the same court said:
“ The precise ground upon which the refund is demanded must be stated in the application to the commissioner, and we think if that is not done a party can not base a recovery in the court upon an entirely different and distinct ground from that presented to the commissioner.” (Our italics.)
It is further contended by plaintiff that the commissioner failed to properly allocate the excess-profits tax between plaintiff and the Clinton Sugar Refining Company. This *89 particular question was brought to the attention of plaintiff in a letter from the defendant dated March 27, 1920, in which it is stated:
“ In the absence of specific instructions as to how you desire to allocate the excess-profits tax, the entire excess-profits tax is credited to the consolidated income, and the additional tax found due, charged to you. In this case any adjustment desired may be made between the companies on your books.”
No objection whatever was made to this suggestion, nor was there any request for a different allocation, and no complaint was presented to the commissioner in any claim for refund. Plaintiff is therefore precluded from asserting same at this time. See Tucker v. Alexander, and Red Wing Malting Company v. Willcuts, above cited.
We have reached the conclusion that the action of the commissioner in determining that the two companies involved herein were affiliated in the year 1917, and in computing and assessing the tax accordingly, was correct. The petition will therefore be dismissed.
Sinnott, Judge; Green, Judge; Graham, Judge; and Booth, Chief Justice, concur.